# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CANDACE HARBAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 2799 |
| ) | |
| BOARD OF EDUCATION OF THE CITY OF ) | Judge Rebecca R. Pallmeyer |
| CHICAGO, a body politic and corporate, and ) | |
| JEAN-CLAUDE BRIZARD, in his official capacity) | |
| as the Chief Executive Officer of the Board of ) | |
| Education of the City of Chicago, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Candace Harbaugh ("Harbaugh") alleges that she was unlawfully terminated from her employment as a teacher by Defendant Board of Education of the City of Chicago (the "Board"). Harbaugh filed a four-count complaint in state court against the Board and its Chief Executive Officer[1], which the Board subsequently removed to this court. She alleges that the Board's termination of her employment violated the Illinois Tenure Act; that she is entitled to a writ of mandamus under Illinois law; and that the Board's termination of her employment violated the Due Process clauses of the Federal and Illinois constitutions. Harbaugh seeks reinstatement with back pay, back benefits, and retroactive seniority.

Harbaugh and the Board have filed cross-motions for summary judgment. Harbaugh claims that because she was employed by the Board as a full-time teacher for the statutorily-required four years, she attained tenured status pursuant to the Illinois Tenure Act and was therefore entitled to notice and a hearing prior to termination. The Board contends that Harbaugh did not in fact achieve tenured status because during the first of the four years Harbaugh at issue, Harbaugh worked as a "full-time-basis substitute teacher," which was not a tenure-eligible position. Accordingly, the

---

[1] The suit was originally filed naming former Chicago Board of Education CEO Arne Duncan as a Defendant. Jean-Claude Brizard has since assumed that role.

Board asserts, Harbaugh received all of the process she was due as a probationary teacher. For the reasons stated here, the Board's motion for summary judgment is granted and Harbaugh's motion for summary judgment is denied.

## FACTUAL BACKGROUND

In July 2003, Harbaugh was hired as a music teacher at Blaine Elementary School in Chicago.[2] (Pl.'s 56.1(a) ¶¶ 5, 6.) Harbaugh worked at Blaine during the 2003-2004 and 2004-2005 school years. (Defs.' 56.1(a) ¶¶ 27-28.) Harbaugh's employment at Blaine was not renewed (*Id.* ¶ 29), but she obtained employment at Mather High School and worked there for the 2005-2006, 2006-2007, and 2007-2008 school years. (Defs.' 56.1(a) ¶ 7; Pl.'s Resp. ¶ 7.)

During the 2003-2004 school year at Blaine, the Board classified Harbaugh as a "full-time-basis" ("FTB") substitute teacher. (Pl.'s 56.1(a) ¶ 20.) FTB was the label that the Board, at that time, gave to a substitute teacher who was assigned full-time to a specific school. (Defs.' 56.1(a) ¶ 8.) The Board distinguished FTBs from the "day-to-day substitute teacher" category, with the latter category including all other substitute teachers who were not FTBs. (*Id.* ¶ 9.) Although Harbaugh had previously been a day-to-day substitute teacher on a substitute teaching certificate, beginning in 2003 at Blaine, Harbaugh taught as a full-time substitute teacher on a regular teaching certificate. (*Id.* ¶¶ 22-24, 27-28.)

In November 2003, Harbaugh received a letter from the Board's then-CEO, Arne Duncan, informing her that, pursuant to the terms of the proposed Union contract, effective July 1, 2004 "all regularly certified full-time basis (FTB) substitute teachers in vacant teaching positions not being held for teachers on leave will be classified as appointed (probationary) teachers. This appointment

---

[2] Harbaugh also worked as a "day-to-day substitute teacher" in the Chicago Public Schools between 1996 and 2002, after receiving a substitute teaching certificate on December 22, 1995. (Defs.' 56.1(a) ¶¶ 22, 23.) The record does not include detailed information about Harbaugh's employment during this time period. Harbaugh does not argue that her time as a day-to-day substitute should be counted for tenure purposes.

classification would immediately place such teachers on track to become tenured." (*Id.* ¶ 19.) The change in Harbaugh's status resulted from an agreement between the Board and the Chicago Teachers Union ("Union")[3] to eliminate the FTB category and introduce a new classification for teachers—"probationary appointed teachers" ("PATs"). (*Id.* ¶ 10.) Pursuant to that agreement, as of July 1, 2004, the FTB category was eliminated, and any employee labeled a FTB was reclassified as either a PAT or a temporarily assigned teacher ("TAT"). (*Id.* ¶¶ 11,12.) The Board appointed any qualified FTB who had been assigned to a vacant position on June 30, 2004 as a PAT in that position for the 2004-2005 school year. (*Id.* ¶ 13.) In his letter, Duncan explained that the change had been made because "[w]e believe that all regularly certified teachers working in our schools should be given proper recognition and a greater level of job protection." (*Id.* ¶ 19.)

In August 2004, Harbaugh received a letter from Ascencion V. Juarez, the Chief Human Resources Officer of the Board, notifying her that "effective July 1, 2004, your status as a full-time basis substitute teacher (FTB) was changed to that of a probationary appointed teacher (PAT)." (*Id.* ¶ 20.) The letter also explained that if Harbaugh remained a PAT for four consecutive school years, she would achieve tenured status. (*Id.*) Specifically, the letter explained that "[y]our probationary period began July 1, 2004, and must consist of four (4) consecutive complete school years of satisfactory service. . . . After four (4) complete school years of satisfactory service, PATs will attain tenure with the Chicago Public Schools at the start of the fifth year of appointment." (*Id.*) Harbaugh would therefore have been tenured had she remained as a PAT continuously until July 1, 2008.

Instead, however, in May 2008, the Board terminated Harbaugh's appointment, effective June 30, 2008. (*Id.* ¶ 11.) The Board did not provide Harbaugh with a hearing or other opportunity to contest the Board's decision. (Pl.'s 56.1(a) ¶¶ 12-14.) Without formally characterizing her

---

[3] The Chicago Teachers Union is the sole and exclusive bargaining representative of all teachers employed by the Chicago public school system. (Defs.' 56.1(a) ¶ 5.)

termination as "for cause," the Board stated, in a letter from CEO Arne Duncan, that the reasons for Harbaugh's termination were her failure "to improve in setting and maintaining norms, standards, and established routines for student conduct" and her exhibition of "pedagogical differences with school philosophy."[4] (Pl.'s 56.1(a) ¶ 12; Defs.' 56.1(a) ¶ 33.) After her termination, Harbaugh was not reappointed to another full-time position with the Chicago Public Schools.

## DISCUSSION

The court notes, first, the basis for its jurisdiction over this case. Plaintiff has raised several claims, including an allegation that Defendant violated her right to procedural due process by terminating her job without a hearing. A procedural due process violation occurs when someone acting under color of state law deprives the plaintiff of a protected property interest without due process of the law. *Tenny v. Blagojevich*, No. 10-3075, 10-3076, 10-3077, 10-3078, 10-3106, 10-3140, ___ F.3d ___, 2011 WL 3726281, at *2 (7th Cir. Aug. 25, 2011), citing *Germano v. Winnebago County*, 403 F.3d 926, 927 (7th Cir.2005). Whether a plaintiff has a property interest depends on whether she can make a "legitimate claim of entitlement" that is "defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Germano*, 403 F.3d at 927. Whether Plaintiff Harbaugh is entitled to due process as a matter of federal law depends, then, on whether she has a protected interest in her continued employment as defined by state law.

Harbaugh contends she enjoys such a protected interest under the Illinois School Code. Harbaugh is correct that a teacher who has achieved tenured status under that Code has a protected property interest in her continued employment and is entitled to an opportunity to rebut

---

[4] The record also contains one-page "Teacher Evaluation Review" forms from 2003-2004, 2005-2006, 2006-2007, and 2007-2008 (2004-2005 does not appear in the record). (Pl.'s Ex. F.) The "weaknesses" mentioned in these forms include criticism that Harbaugh "[h]as not established and maintained reaso[n]able rules of conduct within the classroom," and "[n]eeds to work on making the students aware of objectives and expectations." (Pl.'s Ex. F at 4.)

any claim that her discharge is for cause. *See Gleason v. Bd. of Educ. of the City of Chi.*, 792 F.2d 76, 79 (7th Cir. 1986) ("[A] tenured teacher . . . [has] a protectible property interest in continued employment . . . [, and] due process principles require that a public employee who has a protectible interest in continued employment . . . be afforded a meaningful opportunity to rebut dismissal charges brought by the employer."). Harbaugh's claim that she has earned tenure under the Code is the underpinning of all of her claims in this lawsuit. Her claim for denial of due process based on the Illinois Constitution similarly requires her to have achieved tenured status. *Id.* And, of course, to state a viable claim for termination in violation of the Tenure Act, Harbaugh must have attained tenured status. *Cf. People ex rel. Thomas v. Bd. of Educ. of the City of Chi.*, 40 Ill. App. 2d 308, 317, 188 N.E.2d 237, 242 (1st Dist. 1963) ("There is no doubt that under sections 34-84 and 34-85 of the School Code [the provisions governing probationary employment] a hearing in connection with a probationary discharge is not required."). Finally, to be entitled to a writ of mandamus, a teacher must show that she was improperly removed, which, in this case, would also require Harbaugh to show that she had attained tenured status and was removed without regard to the procedures that protect tenured teachers. *Piquard v. Bd. of Educ. of Pekin Cmty. High Sch. Dist. No. 303*, 242 Ill. App. 3d 477, 481, 610 N.E.2d 757, 760 (3d Dist. 1993).

A determination of Plaintiff Harbaugh's right to any relief thus begins and ends with the question of whether she attained tenure pursuant to the Illinois Tenure Act. *See Dargis v. Sheahan*, 526 F.3d 981, 989-90 (7th Cir. 2008) (where plaintiff, who had a property interest in his job as a correctional officer, was placed on unpaid leave, district court's order directing sheriff to conduct a hearing was the appropriate remedy), citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In this case, the facts are undisputed. The parties'

disagreement is on whether the facts support Plaintiff's claim to tenure protection as a matter of law.

In addressing this question, the court notes that "teacher tenure provisions of the School Code are in derogation of common-law and must be strictly construed in favor of the school district." *Bart v. Bd. of Educ. of the City of Chi.*, 256 Ill. App. 3d 880, 883, 632 N.E.2d 39, 41 (1st Dist. 1993). The parties agree that Harbaugh's time as a day-to-day substitute does not factor into the required four-year period, a conclusion firmly buttressed by relevant case law. *See Thomas*, 40 Ill. App. 2d at 319, 188 N.E.2d at 243. The dispute here centers on whether the 2003-2004 school year, during which Harbaugh was employed as a FTB substitute, counts towards her completion of the four-year probationary period required to achieve tenure.[5] If so, she achieved tenured status during July or August 2007.[6] If not, she received a proper probationary discharge.

Harbaugh contends that as a FTB substitute, she accrued tenure just as she would have as an appointed probationary teacher. She argues that the text of the Tenure Act supports such a conclusion. The Act provides that, for its purposes, "'teachers' means and includes all members of the teaching force excluding the general superintendent and principals." 105 ILCS 5/34-84. Plaintiff states her case simply: "'All members' means all members. . . . Regardless of whether it was the Board's own policy to exclude time as an FTB from tenure calculations, the Tenure Act, which neither contains nor authorizes any such exclusion, controls. . . . Law trumps policy." (Pl.'s

---

[5] Under the Illinois Tenure Act, "[a]ppointments and promotions of teachers shall be made for merit only, and after satisfactory service for a probationary period of . . . 4 years with respect to probationary employees who are first employed as full-time teachers in the public school system of the district on or after January 1, 1998, . . . after which period appointments of teachers shall become permanent, subject to removal for cause in the manner provided by Section 34-85." 105 ILCS 5/34-84.

[6] If her time as a FTB substitute counted towards tenure, Harbaugh would have achieved tenured status four years from the date at which she began service as a FTB substitute. That exact date is not in the record, but a document contained in the record does indicate she "report[ed] for service" as a FTB on August 27, 2003. (Defs.' Ex. K.) It is unclear whether this would be the effective date for tenure purposes.

6

Br. at 4.) Such a reading, however, creates ambiguities that Plaintiff does not address. For example, although she has conceded that her time as a day-to-day substitute does not count, she does not explain why day-to-day substitutes would not be considered "members of the teaching force" for tenure purposes, but FTB substitutes would be. Furthermore, the term "teaching force" is not itself otherwise defined. Again, Plaintiff does not explain why part-time teachers or day-to-day substitutes would not be included within this "force," and would not also be tenure-eligible. Taking Plaintiff's preferred definition to its logical conclusion, there could be no hierarchy among non-tenured teachers within CPS; part-time, full-time, substitute, and appointed teachers would all be tenure-eligible.[7]

The court declines to interpret ambiguous statutory language to produce an unintended result. *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) ("When interpreting statutes, we give words their plain meaning unless doing so would . . . lead to absurd results."). The teaching hierarchy currently in place is the result of negotiations between the Board and the Union, and the complete evisceration of that negotiated hierarchy—indeed, the evisceration of any negotiation over this issue—makes little sense.

---

[7] Other language § 5/34-84 rebuts Plaintiff's textual argument, as well. Plaintiff's focus on the definition of "teacher" offered in the Tenure Act ignores the statute's applicability to "*probationary employees* employed as full-time teachers." 105 ILCS 5/34-84 (emphasis added). *Thomas* noted that the term "probationary period" is not defined, 40 Ill. App. 2d at 316, 188 N.E.2d at 241; the court notes that "probationary employee" is not defined either. *Thomas* explained, however, that a probationary period "begins with the date of the appointment" to the probationary position. The only logical conclusion to be drawn from the *Thomas* court's explanation is that an individual becomes a "probationary employee" when she is *appointed* to a probationary position. In the context of the Tenure Act, "probationary" is a term of art. When the School Board appointed Harbaugh to a position that neither party disputes was a tenure-track slot, the Board notified her that she was being appointed as a "*probationary* appointed teacher," or PAT, and that, with this appointment, she was entering the probationary period that precedes an award of tenure. Harbaugh makes much of her status as a "teacher" to argue that § 5/34-84 applied to her during the 2003-2004 school year, but she offers no basis on which the court could conclude she was a probationary employee for the course of that year. Yet the statute plainly applies only to probationary employees.

As Defendants explain, the School Code, of which the Tenure Act is a part, grants the Board the power to "appoint" teachers to tenure-track positions. The School Code grants enumerated powers to the Board, but also provides that those powers "are not to be construed as exclusive" and that the Board "shall also exercise all other powers that may be requisite or proper for the maintenance and the development of a public school system." 105 ILCS 5/34-18. Defendants urge that *Thomas* recognized the Board's power to appoint teachers to different tenure tracks. In that case, plaintiff teacher had completed a total of six years and four months of service, serving as a substitute and appointed teacher.[8] *Thomas*, 40 Ill. App. 2d at 313, 188 N.E.2d at 240. The plaintiff argued that the time she worked as a substitute teacher on a day-to-day basis on a temporary teaching certificate should count as part of her probationary period. *Id.* at 316, 188 N.E.2d at 241. The Illinois Appellate Court rejected plaintiff's contention, explaining that "[t]he term 'probationary period,' although not specifically defined by statute, connotes an appointment from an eligible list following an examination; and a probationary period, being a testing period, begins with the date of the *appointment* which will ripen into a permanent position following the statutory probationary period." *Id.* (emphasis added). Because the plaintiff had not been appointed by the Board as a permanent teacher during the time that she worked as a day-to-day substitute, this time did not count towards her probationary period. *Id.*

No controlling authority specifically addresses the question of whether a teacher may count her time as a FTB substitute towards her requisite four-year probationary period, but a court in this district has addressed the issue, and its analysis is instructive. *See Blazquez v. Bd. of Educ. of the City of Chi.*, No. 05-CV-4389, 2007 WL 2410369 (N.D. Ill. Aug. 20, 2007). In that case, Alma Blazquez, a special education teacher, had worked for four years as a FTB substitute teacher

---

[8] Thomas served as a day-to-day substitute from February 1953 to June 1958, and as an appointed teacher from September 1, 1958 to January 11, 1961. *Thomas*, 40 Ill. App. 2d at 310-311, 188 N.E.2d at 238-39. At the time, the Board required three years of service as an appointed probationary teacher to achieve tenured status. *Id.*

before being "displaced" prior to the 2003-2004 school year. *Id.* at *1, *5. In examining whether Blazquez had a viable due process claim for her termination without "any procedural due process," Judge Coar noted that the terms of her employment were laid out in the Illinois School Code, and "by that document's very terms and her own language, she has no legitimate expectation of continued employment." *Id.* at *20. The court found it "clear from the record that the requisite four years do not begin accruing until a teacher has been *appointed* as a teacher," and Blazquez, as a full-time-substitute, had never received such an appointment. *Id.* The court concluded that "[a]s a FTB substitute teacher, [plaintiff] simply did not retain the same benefits and protections as an appointed or tenured teacher," and rebuffed her attempts to claim that she had such status based on "isolated school code language." *Id.* at *21. Because she had not achieved tenure, Blazquez had no protected property interest in her continued employment, and therefore had no due process claim. *Id.*

Harbaugh argues that her case is distinguishable from *Blazquez*. Specifically, Harbaugh asserts that in *Blazquez*, the plaintiff never made the argument that she asserts now: that "the Board's claimed power to label full-time teachers as tenure track or non-tenure track (whether by 'appointment' or otherwise) violates both the letter and the spirit of the Tenure Act." (Pl.'s Resp. at 4, 6.) Harbaugh points to the following excerpt from *Thomas*:

> If the ruling of the trial judge in this case were to be approved, the board could retain the services of temporary teachers to the exclusion or [sic] regularly qualified teachers, a practice which would be contrary to the entire spirit of the Tenure Statute, and the board would thereby be given the power to circumvent and nullify the Tenure Act. Such an interpretation would permit the board to do indirectly what the statute forbids it to do directly.

*Thomas*, 40 Ill. App. 2d at 316, 188 N.E.2d at 242. In other words, the *Thomas* court was concerned that according tenure rights to teachers who had not earned them would permit the Board to violate the collective bargaining agreement with the teachers, or the Tenure Act itself. Harbaugh insists that "[t]he primary concern of the court in *Thomas* was the fact that the teacher

9

there had not passed the exam for a regular teaching certificate," (Pl.'s Resp. at 5), but as this court reads *Thomas*, the court's primary concern was that a finding for the plaintiff teacher would allow temporary employees to acquire tenure, a result that would "nullify the purposes of tenure laws." *Thomas*, 40 Ill. App. 2d at 313, 188 N.E.2d at 240. Indeed, the *Thomas* court went on to explain that "[o]ur courts have consistently held in similar situations that, under the Civil Service Law, appointments of persons not on an eligible list as temporary employees in preference to persons on such a list cannot be sustained." *Id.* at 316-17, 188 N.E.2d at 242.

The *Thomas* case makes clear that the result Plaintiff urges is exactly the result the Tenure Act was designed to eliminate: protection of the jobs of those without tenure or probationary status at the potential expense of those who have earned such status. *See also Piquard*, 242 Ill. App. 3d at 480-81, 610 N.E.2d at 760 ("The primary purpose of the School Code's tenure provisions is to give tenured teachers priority over nontenured teachers and, as between tenured teachers, to give priority to those with the longer length of continuing service."). The FTB classification itself is part of a hierarchy that resulted from negotiations between the teachers' union and the Board of Education and is contemplated by the Tenure Act. The parties have not presented the specifics of the hierarchy, but it is clear that FTB substitutes and day-to-day substitutes receive fewer job protections than tenured teachers. *See, e.g., Chicago Teachers Union, Local No. 1 v. Chicago School Reform Board of Trustees,* 338 Ill. App. 3d 90, 94, 787 N.E.2d 224, 227 (1st Dist. 2003) (noting the Collective Bargaining Agreement's provision for removal of FTB substitutes before removal of certified and appointed teachers when teacher reductions are necessary); *Chicago Teachers Union, Local No. 1 v. Illinois Educational Labor Relations Board*, 334 Ill. App. 3d 936, 939, 778 N.E.2d 1232, 1235 (1st Dist. 2002) (discussing preferential assignment of regularly appointed and certified teachers to summer school classes to FTB substitutes and day-to-day substitutes). *See also Filar v. Chicago School Reform Board of Trustees*, 375 Fed. Appx. 607, 608 (7th Cir. 2010) (explaining, in the context of an age discrimination case, that "FTBs have less

seniority than tenure-track 'appointed' teachers, meaning that when teaching positions lose funding or are no longer needed, FTBs are 'displaced' first"). The court concludes that the result Plaintiff urges would itself be contrary to both the letter and spirit of the Tenure Act.

Construing the provision in the light most favorable to the Board, *Bart*, 256 Ill. App. 3d at 883, 632 N.E.2d at 41, this court concludes that Harbaugh's time as a FTB substitute did not count towards her tenure accrual. Because this court finds that Harbaugh did not achieve tenured status, it is not necessary to consider the Board's claim that the Tenure Act does not create a private cause of action, nor is it necessary to consider the Board's argument that Harbaugh's claim is barred by the doctrine of laches. The lack of tenured status is also fatal to Plaintiff's request for a writ of mandamus, *Piquard*, 242 Ill. App. 3d at 481, 610 N.E.2d at 760, and her due process claims. *Gleason*, 792 F.2d at 79.

## CONCLUSION

For the reasons set forth above, Plaintiff Candace Harbaugh's Motion for Summary Judgment [16] is denied, and Defendant Board of Education of the City of Chicago and Chicago Board of Education CEO Jean-Claude Brizard's Motion for Summary Judgment [19] is granted.

ENTER:

Dated: September 7, 2011

REBECCA R. PALLMEYER
United States District Judge